IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 12, 2014

## STATE OF TENNESSEE v. CURTEIS BENJAMIN ARZON

**Direct Appeal from the Circuit Court for Montgomery County**
**Nos. 41201061, 41201077     John H. Gasaway, Judge**

_____

**No. M2013-01664-CCA-R3-CD - Filed April 15, 2014**

_____

The appellant, Curteis Benjamin Arzon, pled guilty in the Montgomery County Circuit Court to two counts of aggravated burglary. The trial court sentenced the appellant to four years in the Tennessee Department of Correction for each offense. On appeal, the appellant challenges the trial court's denial of alternative sentencing. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JERRY L. SMITH and JOHN EVERETT WILLIAMS, JJ., joined.

Michael T. Pugh, Clarksville, Tennessee, for the appellant, Curteis Benjamin Arzon.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith DeVault, Senior Counsel; John Wesley Carney, Jr., District Attorney General; and Tim Peters, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I. Factual Background

On October 1, 2012, the Montgomery County Grand Jury returned indictment number 4121077, charging the appellant with aggravated burglary and theft of property valued more than $1,000 but less than $10,000. On October 2, the grand jury returned indictment number 41201061, charging the appellant with aggravated burglary and theft of property valued more than $10,000 but less than $60,000.

On March 28, 2013, the appellant pled guilty to two counts of aggravated burglary in exchange for the dismissal of the theft charges. The plea agreement provided that the appellant would be sentenced as a Range I, standard offender but that the trial court would determine the length and manner of service of the sentences. As a factual basis for the pleas, the State maintained that

> [in case number 41201061], on August 18th, 2012, the [appellant] entered the home of a Mr. Garcia here in Clarksville, Tennessee, after Mr. Garcia left. A computer, guitar, jewelry and coins were stolen from the property[.] Later[, the appellant] gave a detailed description on how he went in and burglarized the house.
>
> In case [number 4121077], between June 23rd and July – the date listed in the indic[t]ment, Your Honor, I apologize. [The appellant] entered his grandfather's home and took gift cards . . . and other items. Later, when he was confronted by the police, he confessed to taking those items.

On June 13, 2013, a sentencing hearing was held. The twenty-two-year-old appellant testified that after he was released on probation on February 2, he lived with his mother. Approximately one month later, on her birthday, she drank alcohol and used cocaine then hanged herself in the bathroom. Thereafter, the appellant lived with his uncle and began using drugs and alcohol. The appellant drove while under the influence and had an accident, during which he ruptured his Achilles tendon. When he went to the emergency room, he was prescribed pain pills. Afterward, the appellant took the pain pills along with other drugs and alcohol. A couple of weeks later, he took pain medicine and fell asleep in his car. The police found him and charged him with driving under the influence (DUI). The appellant immediately reported the arrest to his probation officer, Mr. Lucas, and expressed a desire to find a rehabilitation program.

The appellant said that his grandmother took him to the Lighthouse and that he was accepted into that program. When the appellant informed Mr. Lucas of his acceptance to the Lighthouse, Mr. Lucas told the appellant to postpone entering rehabilitation until he went to court on the DUI.

The appellant said that he subsequently missed a court date on the DUI charge. When he "came back to Court on a blue motion," he was rearrested and was later released. A couple of weeks later, he

decided that I didn't know what to do and I was scared I was going to go back to prison because I couldn't get help and I was on drugs really bad and I decided not to go to Court and then I started stealing things because I couldn't go to work anymore, because I had a warrant out, so I started stealing things, which led to me stealing from my family as well as Mr. Garcia.

The appellant said that he wrote letters of apology to the victims because he regretted hurting them. He said that he took full responsibility for his actions, that he committed crimes because of drugs, and that he wanted to get help for his addiction. After the appellant's incarceration, he contacted Sober Living and was accepted into a residential rehabilitation facility for an eighteen-month program.

The appellant said:

I know [the trial court] released me last time and I was supposed to do right, I honestly tried to do what I was supposed to do and when I messed up, I did go to the people I was supposed to and ask them for help and I realize that I was wrong for getting on the drugs in the first place, but I do have an addiction. I have had it since I was really young and I really want to change my life and get help, I don't want to end up back here and going to prison my whole life, you know, like my mother and my father have always been on drugs. Some other people in my family as well. I don't want my life to end up like that . . . . I have two sisters that I really love and I really want to be there for them because my Mom is no longer here for them. And like my grandmother, I do not want her last memories of me to be from the penitentiary. So I am sorry . . . [and] I need help.

Linda McArthur, the appellant's grandmother, testified that the appellant's mother hanged herself on her fortieth birthday. The appellant saw his mother shortly after she was discovered. McArthur said that his mother's death "really affected him[,] . . . and it was just really hard for us to cope at that time." Afterward, the appellant's attitude was negatively affected; he became angry and used drugs. McArthur said that before his mother's suicide, the appellant was looking for a job and taking general equivalency diploma (GED) classes. McArthur verified that the appellant had visited and been accepted into the Lighthouse program.

The court accredited the appellant's testimony regarding the death of his mother and

his claim that he had been addicted to drugs "'since [he] was young.'" The court also accredited the appellant's claims of remorse. See Tenn. Code Ann. § 40-35-113(13). As the sole statutory mitigating factor, the court found that the appellant's conduct neither caused nor threatened serious bodily injury. See id. at (1). As enhancement factors, the court found that the appellant had a history of criminal convictions in addition to those necessary to establish the appropriate range; that the appellant failed to comply with the conditions of a sentence involving release into the community; and that the appellant committed the aggravated burglaries while serving a probationary sentence. See Tenn. Code Ann. § 40-35-114(1), (8), (13)(C).

The court stated that the appellant did not have a long history of criminal conduct. See Tenn. Code Ann. § 40-35-103(1)(A). Nevertheless, the court found a need for deterrence "given [the appellant's] history of what he has done in the length of time that he has done it, there should be a deterrence to others who are likely to follow in his footsteps." See id. at (1)(B). Additionally, the court found that measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the appellant, noting that the appellant was on probation at the time he committed the instant offenses and that he had violated probation on two other occasions. See id. at (1)(C). Accordingly, the court found that the appellant's potential for rehabilitation was poor and denied alternative sentencing.

Based upon those findings, the trial court imposed two concurrent sentences of four years for the aggravated burglary convictions. On appeal, the appellant challenges the trial court's denial of alternative sentencing.

## II. Analysis

Our supreme court has held that "sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012). Additionally, the court has held "the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012). In conducting its review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for

rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; see also Bise, 380 S.W.3d at 697-98. The burden is on the appellant to demonstrate the impropriety of his sentence. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

An appellant is eligible for alternative sentencing if the sentence actually imposed is ten years or less. See Tenn. Code Ann. § 40-35-303(a). The appellant's sentences meet this requirement. Moreover, an appellant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony should be considered a favorable candidate for alternative sentencing absent evidence to the contrary. See Tenn. Code Ann. § 40-35-102(6). The following sentencing considerations, set forth in Tennessee Code Annotated section 40-35-103(1), may constitute "evidence to the contrary":

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

State v. Zeolia, 928 S.W.2d 457, 461 (Tenn. Crim. App. 1996). Additionally, a court should consider the defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. See Tenn. Code Ann. § 40-35-103(5).

In the instant case, the appellant is a Range I, standard offender convicted of Class C felonies; therefore, he is considered to be a favorable candidate for alternative sentencing. However, the trial court found that alternative sentencing should be denied because of the need for deterrence and because measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the appellant. Tenn. Code Ann. § 40-35-103(1)(B) and (C).

On appeal, the appellant contends that the trial court failed to comply with the requirements of State v. Hooper, 29 S.W.3d 1 (Tenn. 2000). In Hooper, our supreme court specifically noted five factors for consideration when denying probation on the basis of deterrence. Id. at 10-12. The appellant complains that during the sentencing hearing, the trial court addressed only the fifth factor, namely that the appellant "has previously engaged in criminal conduct of the same type as the offense in question, irrespective of whether such

conduct resulted in previous arrests or convictions." Id. at 12.

Our supreme court recognized in Hooper "that any enumeration of factors in this nebulous area is imperfect" and specifically stated that the listed "factors are meant to serve only as a guide." Id. Therefore, the court held that a sentencing "court need not find that all of these factors are present before ordering incarceration based on a need to deter similar crimes." Id. The trial court found a need for deterrence based upon the appellant's "history of what he has done in the length of time that he has done it." The record reflects that within a span of a few years, the appellant repeatedly turned to burglary and theft to support his drug habit. Therefore, we conclude that the trial court did not abuse its discretion by finding a need for specific deterrence. See State v. Vanda Watkins, No. W2006-01209-CCA-R3-CD, 2007 WL 2284817, at *5 (Tenn. Crim. App. at Jackson, Aug. 7, 2007).

Moreover, although ignored by the appellant on appeal, the trial court also found that alternative sentencing should be denied because of the appellant's failure to comply with the terms of probation. The record reflects that within a period of three years, the appellant violated his probation at least three times, including committing the instant offenses while serving a probationary sentence. As the trial court found, this demonstrates poor rehabilitative potential. Accordingly, we conclude that the trial court did not abuse its discretion by denying alternative sentencing.

### III. Conclusion

Upon review, we affirm the judgments of the trial court.

_____
NORMA McGEE OGLE, JUDGE